Good morning all. My name is William Kiang. I am the petitioner in this case, Xing, X-I-N-G. In this case, I would also like to reserve two minutes for rebuttal. This case is based on the immigration proceedings of the Solomon petition. The petitioner is claiming she did not have a full and fair hearing and her due process rights were thus violated. The major issue in this case is, I believe just one major issue, is she was arrested by the Chinese police for bringing in Bibles to China and she was detained for three days and the charge was using Christianity to harm the Chinese government and the communist party. And yet, when it came to court, the judge found out the charge, the translation of the charge on the bail receipt says otherwise. It says illegal family gathering, okay? Illegal family of course is for house church gathering. So therefore, the petitioner told the court that the translation was wrong by the attorney. She even read in court the original Chinese version of the bail receipt, substantiating her claim that the charge was using Christianity to to be against the party and the government. Now, the immigration judge knowing that there must be some gross English translation error and yet the judge blamed the petitioner. You have five years pending before the immigration court. Why didn't you discover this error? And the respondent is not fluent in English. She reads her Chinese version of the documents. So knowing that there's something wrong with the translation, the judge still used this as inconsistency to find the respondent. So counsel, I'll be asking your friend what the government's position is as to what the bail receipt actually says. And I'm sure the government has a position on that. But let's assume the government concedes that the bail receipt actually says exactly what your client read into the record. What about the other findings on credibility by the IJ and the BIA, including that your client told the asylum officer that it was one Bible and in her testimony she the Chinese police. Why wouldn't that alone be sufficient to uphold the credibility? That's right, your honor. In a recent case, QIU versus FAR, the ninth circuit, November of last year, it says that the asylum office meeting is informal and with the asylum officer to consider the evidence presented. Then the officer would decide whether to grant asylum or whether the matter should go to the immigration judge for formal adjudication in an adversarial situation. So the asylum office assessment to refer the record is just that. It starts a motion for the merits hearing before immigration judge. The judge takes evidence and makes independent findings concerning that evidence. In this case, the petitioner already told the judge she had difficulty understanding the interpreter at the asylum office. Contrary to the government attorney's answering brief that the interpreter was professional, actually in asylum office, all you need to do is bring somebody that speaks English and understand your dialect. And as long as that person is not related to you like a relative, so in asylum office hearing, any findings that could be subject to errors by translator or the interpreter. In this case, petitioner already told the judge, I knew how many Bibles I bought. I bought in New York and I knew how many Bibles I packed. But counsel, the issue I'm having here is that at least according to the asylum officer's notes, he didn't say how many Bibles. When your client said one, there was something like, are you sure it was just one? And supposedly your client said yes. So even if it wasn't a professional interpreter, why is the immigration judge not entitled to find or disbelieve your client that it was just a mere translation error? Why is the immigration judge required to accept your client's explanation that she said something different to the asylum officer? The immigration judge is not required to take the asylum officer's assessment on his face value in this particular situation. Petitioner is not English speaker and she already said her English is limited. She did not quite understand the interpreter. And sometimes interpreter translate English into Chinese in a way that the petitioner misunderstood also. In this fact, that's why the court has to have a formal hearing and independently find whether the petitioner is honest or not, sometimes by their demeanor also. And in this particular case, I believe the immigration judge found additional inconsistencies because the major issue is the bail receipt. If the bail receipt is found to be a fraudulent document, like the foundation of a house is broken, the house will collapse. The others, a lot of the findings of inconsistencies, I believe were speculation by the immigration court because the major document is found to be a fraud. Can I ask you a question, please? We've been dealing with the immigration judge, but it's really the board decision that's before us, the immigration decision. And the board took a look at this and decided first, it's too late to try and have this receipt or whatever it was brought before us. That has to be done before. And then said, even if that were not so, we agree with the immigration judge. And that in taking a look at it, all the things that the immigration judge found, which were contrary and relied upon them in determining credibility, that's what the board decided. So why is the board wrong? Why can we say that in the circumstance we have here, that we are compelled to believe that the board got it wrong in its assessment of the facts? Okay, your honor. In this case, for example, they found inconsistencies based on how did you get your visa to the United States? You must have a well-planned, you planned your study overseas, you planned your marriage overseas. And then two years later, they got a visa to come to the United States. The judge used this as a basis for inconsistency also. But I believe that these two young people, the husband and wife, they are well-educated, they are well-traveled, there's no reason the United States consulate overseas will not issue them a tourist visa or an F1 student visa in this case. If the judge could use such simple and obvious reasons, a very weak reason to support an inconsistency funding, I believe the judge is prejudiced already by the most important document, the bail receipt. That's true, but the board said specifically they weren't going to consider that document because they went on to other things. They said it was too late to have that and they said we are not going to consider it in our decision. And it's the board decision that we have in the review. So I don't see how that helps you any of what you just said. Your Honor, we made a belated Lozada requirement. We filed a bar complaint against the previous attorney for the wrong, grossly wrong translation. And yet the bar did not take it. The bar said the attorney did not intentionally do that. But in the matter of Hernandez-Mendoza versus Gonzalez, Bar Lozada is not strictly followed in the life circuit because if the error, the counsel's ineffective assistance is clear and obvious, then you don't need to... You didn't raise that issue before the board. You didn't raise the issue of incompetence before the board. I did, Your Honor. In fact, that was one major issue that we raised before the board and we even retranslated the document even argued on the clear and obvious error by the attorney for ineffective assistance of counsel. So I believe, Your Honor, I just asked the board... I can show you what the board said that they weren't going to consider it, but it's okay. It's all right. Judge Baird, did you have a question? Yes, I've been having some trouble with my translation here. I've been down a couple of times, so I'm going to ask for that the next time, right? Yes. Yes. Now, Mr. King, I also noted that the BIA found that the allegation that the father had bribed the officials so that she could leave China omitted in the 2011 filing statement. It was omitted in the 2012 letter. And it was omitted in the husband's 2017 statement. And the immigration judge and the BIA found that that was an omission, which was suspicious and to the credibility of your client. So it's not only bail receipts, and it's not only the question of the Bible. It's a question that she left out some very important facts. And those, under the totality of the circumstances rule, are independent basis for adverse credibility finding. Are they not? Yes, they are, Your Honor. But in this case, the omission, in my opinion, is less than an inconsistency, which is a direct contradiction. And the father also wrote a letter to the court, I believe. And he also did not mention anything about the bribery. That's understandable. When you mail a letter from China to the United States, it's subject to Chinese government censorship. The father disclosed he bribed the airport security or airport officer. That is very serious on both persons, the airport officer and the father. That's why they did not mention it. I beg your pardon, Your Honor. It's not very clear to me what you're asking. Yeah, Judge Bea, it was very hard to hear. Well, can you hear me now? Yes. Yes. There may be a reason why the father didn't mention the bribery in the letter he wrote from in her 2011 statement to the asylum officer when she was in the United States. Yeah, sure. She mentioned in her statement that the father told her don't mention too much about it. Okay. And besides, she easily passed through the airport in Beijing with no trouble. And so to her, maybe it's not that significant. She just left with a valid U.S. passport, with a valid U.S. visa. Okay. I admit that is an omission, but it should not totally undercut her claim of credibility. All right, counsel, we'll give you some time for rebuttal. And we'll now hear from Good morning, Your Honors. May it please the court, Remy Darucharafudu, representing the Attorney General of the United States. The petition for review should be denied because substantial evidence supports the agency's adverse credibility finding. I will begin by addressing the relevance of the bill receipt. The government's position is that under the REAL ID Act, this court and the agency must consider the totality of the circumstances in addressing petitioner's credibility. And the agency identified several cogent grounds, including the bill receipt, in assessing petitioner's credibility. Counsel, I'd like to hear what is the United States' position as to whether or not the and before the BIA is or isn't a correct translation of the bail receipt? Your Honor, the board did not make that decision. I'm not asking what the board's position was. What the board said is very clear. I'm asking for what the United States' position is now as to whether what petitioner told the IJ and the translation proffered to the BIA was or wasn't a correct translation of the bail receipt. Your Honor, I don't have an answer for that because I don't read Chinese. The government does not, you know, the government goes with what the basis of these. So the government, notwithstanding the fact that this is, at least from petitioner's view, a material issue, and the fact that it might take five minutes to have this translated, the government has never sought to determine whether the petitioner's proffered translation is correct or not? Well, at the immigration court, Your Honor, the judge asked the petitioner to translate the document and she read it into the record. And the judge did not say anything either way as to whether she thought it was the correct translation or not. But the judge specifically did state. Counsel, I heard what the judge, I've read what the judge said, but my question is, so the government has never proceeded in the years since then, and notwithstanding the issues here, to make the very simple determination of whether what the petitioner is saying is correct or not as to the translation? Well, Your Honor, the government believes that the totality of the circumstances is what matters in this case. But that's still not my question, Counsel, and I would ask you to please answer my question. Has the governor, has the government taken any steps to actually determine what the right translation is? Well, the government cannot go outside the record, Your Honor, and make that determination. It's for the agency to make. And this decision was made by the agency based on the board's decision. The board stated that even assuming, I mean, we can assume now that it's correct. So Counsel, you've said that you can't go outside the record. That still isn't my question. So is your answer to my question, the government did not speak to determine what the right translation is? It's not a question of whether the government had to or didn't have to. I'm just asking for a factual question of whether the government did or didn't. The government has not, Your Honor, because it's not the government's burden to do that. It is petitioner's burden to make sure that the documents are translated. Okay. Well, I would express the view that even if you're correct as a matter of law, I agree with what the petitioner said in her brief that finding the truth is the petitioner's translation is correct. And that that was a fundamental, that did in fact lead to a lot of what proceeded. And I think it's unfortunate from my perspective that the government didn't seek to make that determination, even if there is a way to uphold the BIA exclusive of that. But please continue with your argument. Your Honor, there is case law in the circuit and in every circuit that states that if there is a decision which the government does, which the agency does not need to address, the agency does not really need to go into details about that particular decision or that particular aspect when there are other issues that would resolve the case. So in this case, the agency did the right thing. They relied on the totality of the circumstances. And there were four other cogent reasons that the agency gave for the address credibility determination. And I will go into that, Your Honor, before the grounds, if you don't have any other questions about the bail receipt, Your Honor? No, I don't. Okay. A very important issue in this case is the Bible and the testimony before the asylum officer. Petitioner stated quite clearly on the record during the asylum hearing that she brought in one Bible. There are about three pages of testimony going back and forth on that particular issue. That issue, Your Honor, is what we feel is actually very, very important and is the core of the decision of the board because it is the board's decision that a court reviews and not the immigration judge's decision. The board discounted the bail receipts, decided not to even address it, and went on and analyzed the other four reasons that the agency gave for the address credibility finding. This inconsistency regarding the number of Bibles directly relates to the reason that a petitioner was supposedly arrested in China. I mean, there's a big difference between carrying one Bible and approximately 10 Bibles, as petitioner stated in her testimony before the court. And so the agency reasonably relied on this permission, which looks like she was trying to bolster her claim in making an address credibility finding. Additionally, the agency also relied on the fact that petitioner's father had given a bribe in order for her to leave China. Petitioner never mentioned this in her statements before either the asylum officer or in her asylum statement. This is very crucial because it bolsters her claim by explaining how she was able to escape China, even though the police were supposedly monitoring her. And again, it also adds to the fact that she said she could not pay for her school fees and maintain her status in the United States because her father had paid a bribe and he could not afford to pay her school fees. Counsel, I have an unrelated question. Yes, Your Honor. The petitioner has argued that if we don't uphold the credibility finding that we similarly can't uphold the persecution finding because of our recent case of Guo. Does the government agree that if we were to overturn the credibility finding that we would to remand the case and that we couldn't uphold it on the alternative basis determined by the IJ and the BIA? No, we believe that the case could be decided based on the other four cogent reasons given. The case that petitioner cites, which is... Are you talking, Your Honor, about the case regarding the... Okay, that goes to the merits of petitioner's claim, Your Honor, which the agency did not decide. And if the agency decides that the adverse credibility finding does not hold, it would yes, have to, the court would have to remand to the board. But we believe that the adverse credibility finding in this case is supported by cogent and specific evidence presented by the agency. And also, under the totality of the circumstances, this court in a long line of cases has held that a single piece of evidence alone does not compel the conclusion that petitioner is right. So even if the court feels that the bill receipt somehow corroborates petitioner's claim, the bill receipt does not state anything about petitioner's claims in China, about her suffering or anything that happened, or the merits of the claim. It's only a receipt showing that she paid a fine. It doesn't state what happened. It does not state that petitioner was banned from being a Christian. It's just a plain bill receipt. It doesn't say anything at all. So on that basis, we believe that the other four reasons provided by the ruling that petitioner's adverse credibility claim is supported by substantial evidence, Your Honor. Let me go over the four reasons. I'm sorry, I can barely hear you, Your Honor. Maybe there's something wrong with my hearing. Can you hear me better now? Yes, slightly better, Your Honor. All right. Can you tell me what those four reasons were? I think you mentioned one, having to do with the father bribing the Chinese authorities to let his daughter out of China, which was omitted from the 2011 statement to the asylum officer. What are the other three? Oh, the other three, the Bibles, Your Honor. The first one, which we consider to be the most important one, is the number of Bibles. It is very clear. I'm sorry, Your Honor. You mentioned the father bribing, mentioned the Bibles. What are the other two? And then again, the petitioner did not inform the court that the police were still looking for her as early as 2017, when her husband submitted a document. And what's the last one? Mentioning that. And the fourth one were the impossibility of several elements of her case, where she said she was tortured to death, but failed to provide any meaningful explanation of what she meant by being tortured to death. And it seemed like she was just bolstering her claim because she didn't seek medical attention. She claimed that she was jailed for three days. She was tortured to extreme fatigue during the police beating, but she didn't provide anything to bolster her, to support her claim. And so it seems like... Did the immigration judge ask her for corroborating evidence as to her torture claim? Well, the immigration judge had actually, in this case, had asked that this case be dismissed for a little bit. Well, not dismissed. The term I'm using for it is that they had to take it off the calendar to give the petitioner the opportunity to look for, to get all her documents. And so that went on for a while and the case was recalibrated. So the court gave ample opportunity for petitioner to present her claim. I'm not asking about ample opportunity. I'm asking about whether the immigration judge asked her to bring in some documentation or corroboration as to the torture claim. Well, not specifically relating to torture, your honor, in terms of the word torture, but in terms of her entire claim, the case was taking off the calendar so that petitioner could actually get all her documents together, your honor. And so she had ample opportunity and the court is not required to ask for corroborating evidence after the court has already given ample notice that that would be necessary. All right. Thank you, counsel. Thank you, your honor. Mr. Kang, we'll give you two minutes for rebuttal. Thank you very much, your honor. Your honor, the respondent's written statement did not specify how many Bibles. The written statement just said Christian religious materials. And the asylum office, she elaborated and said those religious materials included Christian testimonials, books, a dozen or more of those books and plus Bible. And in court, she also testified, except that she testified 10 Bibles plus Christian testimonial books. Okay. And the judge did not ask her to provide corroborating evidence for the for the convention against torture claim. Now, last thing I need to ask the court is respectfully ask the court is, this is a very serious case. If the respondent can prove that the arrest bail receipt is genuine, then she was arrested by the Chinese police, okay, for using Christian materials to sabotage the Chinese government. So I asked the court to remand this case for a full assessment of, first of all, the document itself, and also based on the true document as the agency to reassess the rest of the apparent inconsistencies or omissions. So that we'll have a full and fair hearing in this case. Thank you very much. Thank you, counsel. We thank both counsel for their helpful arguments and the case just argued will be submitted.
judges: Wallace, Bea, Bennett